IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JEFFREY JOHANSEN,

                              Plaintiff,

            vs.                                    Civil Action No.
                                                   6:02-CV-1297 (LEK/DEP)


COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF:

JEFFREY JOHANSEN, *Pro Se*

FOR DEFENDANT:

HON. GLENN T. SUDDABY              WILLIAM H. PEASE, ESQ.
United States Attorney for the     Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198


OFFICE OF GENERAL COUNSEL           BARBARA L. SPIVAK, ESQ.
Social Security Administration      Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278                  DAVID L. BROWN
                                    Assistant Regional Counsel


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

_____ REPORT AND RECOMMENDATION

        Plaintiff Jeffrey Johansen, who suffers from both physical and

mental impairments, has commenced this action seeking judicial review of an administrative determination denying his application for disability benefits.  Plaintiff contends that the challenged determination, representing the third decision issued by two separate administrative law judges ("ALJs") uniformly finding that he is not disabled, is not supported by substantial evidence.  In support of his appeal of that determination, plaintiff has offered additional evidence which he asks the court to now consider.

Because I find that the additional evidence proffered by the plaintiff is not probative of his condition during the relevant period, which extends through March 31, 1998, when his insured status under the Social Security Act ended, it does not provide a basis for remanding the matter to the agency for further consideration.  Having reviewed the record which was before him at the time of his decision, I find that the ALJ's determination resulted from proper application of the governing legal principles, and is supported by substantial evidence in the record, and therefore recommend the entry of judgment on the pleadings dismissing plaintiff's complaint.

I.    BACKGROUND

Plaintiff suffers from a combination of physical and mental impairments.  Plaintiff's physical conditions stem principally from injuries suffered in a motor vehicle accident which occurred on December 15, 1994, and required emergency hospital treatment.[1]  AT 299-308.  Reports associated with that incident and ensuing treatment reflect that the plaintiff suffered a fracture of the C2 vertebral body.[2]  AT 304.  The record of plaintiff's treatment following the accident is, at best, equivocal on the question of whether he suffered any significant residual effects which would interfere with his ability to work.  Dr. Gregory J. Xanthaky, a physician in Oneonta, New York, completed an assessment of plaintiff's ability to work in September of 1995, finding the plaintiff incapable of working, based upon his diagnosis of dizziness, back pain, anxiety and depression, and alcohol abuse, but recommended referral of the plaintiff to a rehabilitation agency.  AT 284.  Dr. Xanthaky completed another form

---

[1]     Portions of the administrative transcript (Dkt. No. 11), which was filed by the Commissioner with the agency's answer, will be cited as "AT ___."

[2]     In his letter brief, plaintiff asserts that as a result of that accident he fractured four other vertebrae in his lower back.  See Plaintiff's Brief (Dkt. No. 12) at 1. While the record does not contain any reports directly diagnosing plaintiff as having broken those vertebrae, there is some evidence tending to support this assertion. See, e.g., AT 408 (letter report of neurologist Dr. John O. Lusins stating that the plaintiff "had a skull fracture and multiple neck fractures.  He also had multiple lumbar vertebral fractures"); see also AT 313 (noting a statement by Dr. Scrivani that the finding at L4 represents the residual of an old compression fracture).

on March 25, 1999, finding Johansen capable of working on a part time

basis, and again recommending referral for rehabilitation.  AT 283.  In that

later report, Dr. Xanthaky referenced only chronic cervical and lumbar

spine dysfunction as his diagnosis, and found plaintiff capable of walking,

standing, stooping, bending and sitting, lifting and carrying, and pushing

and pulling on a limited basis, though he did recommend against climbing.

*See id.*

In preparation for evaluation of the plaintiff by the New York State

Office of Vocational and Educational Services for Individuals with

Disabilities ("VESID"), a treatment report form was completed on March 7,

1996 by Dr. Janice Stalter.  AT 285-86.  In that report Dr. Stalter recorded

a diagnosis of alcohol dependence with the need to rule out panic

disorder, generalized anxiety disorder, and adult attention deficit disorder,

and noted plaintiff's "[e]xtensive injuries to neck and back area", scoring

plaintiff with a global assessment of function ("GAF") score of 70.[3]  AT

285.

In 1997, plaintiff was referred to Dr. Robert Bethje, M.D., of

---

[3]      According to one authoritative source, a GAF score of 70 indicates some
difficulty in social, occupational, or school functioning, but "generally functioning pretty
well" and sustaining meaningful interpersonal relationships.  *See* Diagnostic and
Statistical Manual of Mental Disorders: Text Revision 34 (4th ed. 2000) ("DSM-IV-TR").

Riverfront Medical Services, located in Vestal, New York for a disability determination.  AT 309-15.  Based upon his examination, Dr. Bethje recorded his impressions that plaintiff was suffering from lumbar syndrome without radiculopathy, depression and anxiety, and possible attention-deficit.  AT 312.  During that examination plaintiff reported to Dr. Bethje that he could walk for approximately one mile, though had difficulty walking up hills; could stand and sit for one hour; and could drive a car, provided he was able to stop and change positions.  AT 311.  Plaintiff also reported that his principal complaint was lower back pain and an inability to engage in activities requiring repetitive bending.  AT 310-11.  Dr. Bethje's examination revealed normal movement in the cervical area, with some minor limitations in the lumbar region.  AT 311, 315.  A report dated July 17, 1997 of Dr. Joseph Scrivani, who is also with Riverfront Medical Services, notes disc space narrowing from C2 through C4 and from C5 through C7 with spurs and neuroforamen encroachment at the cervical level and degenerative spurring with disc space narrowing involving L3 through S1, as well as some bulging at L4 attributed to the residuals of a compression factor with degenerative spurs of the spine.   AT 313.

A psychological evaluation of the plaintiff was conducted by Dr.

Robert J. Russell in August of 1997.  AT 351-56.  To assist in his

evaluation, Dr. Russell administered a Weschler Adult Intelligence Scale -

Revised ("WAIS-R") test, the results of which reflected a verbal

intelligence quotient ("IQ") of 99, characterized as within the average

range; an above average (77th percentile) performance IQ of 111; and a

full scale IQ of 104, again falling within the average range.  AT 355.  Dr.

Russell also reported that plaintiff did not display indications of any

thought disorder, and that his verbal skills, general fund of factual

knowledge and long term memory, language skills, language

development, concentration, attention, and short term memory were all

average.  *Id.*  Dr. Russell concluded that plaintiff's capacity to perform

activities associated with daily living was not impaired and that his

alcoholism represented the key obstacle to his return to full time work as a

machinist.  AT 356.  Based upon his examination and testing, Dr. Russell

diagnosed Johansen as suffering from alcohol dependence and alcohol

withdrawal.  *Id.*

Plaintiff's physical RFC was assessed on August 27, 1997 by Dr.

Abdul Hameed, a state agency medical consultant who reviewed the

relevant medical records and determined that plaintiff is capable of

occasionally lifting and/or carrying up to twenty pounds, and can carry ten

pounds frequently.  AT 370-77.  Dr. Hameed also opined that plaintiff can

stand and/or walk, and sit, for a total of six hours in an eight hour work

day.  AT 371.

Plaintiff was again psychologically evaluated on December 18, 1997

by a state consultant, Dr. Marvin Denburg.  AT 378-80.  Dr. Denburg

observed that plaintiff's speech appeared clear, intelligible, relevant and

coherent, and that Johansen's cognitive functioning demonstrated at least

an average level of intelligence.  AT 379-80.  Dr. Denburg diagnosed the

plaintiff as suffering from alcohol dependency in remission; impulse

control disorder not otherwise specified ("NOS"), with possibly some

improvement; and depressive disorder NOS, and noted a prognosis of

"[g]uarded to fair."  AT 380.  Dr. Denburg also recommended the

continued use of medications to address plaintiff's difficulties, and

additionally suggested the consideration of vocational rehabilitation.  *Id.*

Plaintiff was examined by Dr. G. Joshpe, of Stamford Family

Practice, December 19, 1997.  AT 381-85.  In his report of that

examination, Dr. Joshpe noted no tenderness in plaintiff's cervical spine,

and only minimal tenderness in the lumbar region.  AT 381.  Dr. Joshpe

recorded his impression as post-fracture of the cervical and lumbar spine by history, with possible degenerative traumatic osteoarthritis, and a history that could be consistent with a partially herniated disc.  AT 382. Dr. Joshpe also noted plaintiff's history of liver toxicity, anxiety, depression and alcohol dependency, and observed that his "motivation to return to the work force is poor."  *Id.*

A psychiatric review technique form was completed on January 27, 1998 by Dr. Berliss, a state medical consultant who reviewed plaintiff's records.  AT 390-98.  Based upon his review, which was in part addressed to whether plaintiff suffered from a condition satisfying the requirements of Listings section 12.04, related to affective disorders, and section 12.08, addressing personality disorders, Dr. Berliss concluded that plaintiff has no limitation in performing the activities of daily living, and only a slight limitation in maintaining social functioning.  AT 397.  Dr. Berliss also noted that Johansen seldom exhibits deficiencies in concentration, persistence or pace resulting in failure to complete tasks in a timely manner, in work settings or elsewhere.  *Id.*  Dr. Berliss concluded that none of the Part B criteria for meeting or equaling a listed mental impairment were reflected in plaintiff's medical records.  *Id.*

In addition to completing the review technique form, Dr. Berliss also evaluated plaintiff's mental RFC.  AT 386-88.  In that RFC assessment, Dr. Berliss noted no marked limitations in any of the specified areas, and only moderate limitations in certain categories, including his abilities to understand or remember detailed instructions; to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within his schedule; to complete a normal work day and work week without interruptions; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; and to set realistic goals or make plans independently of others.  *Id.*

On January 21, 1998 Dr. Lusins, a neurologist, forwarded a letter report to Dr. Xanthaky noting, based upon his examination, that plaintiff appeared to suffer from the lingering effects of a traumatic injury to his low back with persistent symptomology, indicating his need for a baseline lumbar CT scan to further assess plaintiff's back condition.  AT 408-09. On February 9, 1998, following CT testing, Dr. Lusins again wrote to Dr. Xanthaky concluding that plaintiff suffers from low back pain syndrome with multi-level degenerative changes.  AT 410.  In a later letter, dated

May 3, 1998, Dr. Lusins concluded, based upon Magnetic Resonance Imaging ("MRI") testing arranged by him, that plaintiff suffered from multi-level advanced degenerative changes with disc protrusions at L4-5 and L5-S1, and recommended referral for further consideration of his condition.  AT 411; *see also* AT 412.

As a result of Dr. Lusin's referral, plaintiff was seen on April 13, 1998 by Dr. James Elting.  AT 415.  In his letter report of that visit, Dr. Elting noted his impression that Johansen suffers from mechanical low back pain, adding that Johansen self medicates for his condition with Advil.  *Id.*  Dr. Elting proposed that plaintiff undergo an abdominal strengthening program and use of lumbosacral orthosis.  *Id.*

II.    PROCEDURAL HISTORY

A.    Proceedings Before The Agency

Plaintiff filed an application for disability insurance benefits on June 5, 1997, alleging a disability onset date of December 15, 1994.  AT 207-09.  That application was denied, both initially and on reconsideration.  AT 109-12, 114-18, 121-24.

At plaintiff's request, a hearing was conducted to address his challenge to the denial of benefits, beginning on December 18, 1998.  AT

40-60.  Following that hearing, at which plaintiff was represented by

counsel, ALJ J. Lawson Brown issued a determination on February 17,

1999 finding that plaintiff was not disabled under the relevant standards.

AT 149-62.  While in that decision ALJ Brown found the existence of

severe impairments and that Johansen is incapable of performing his past

relevant work as a machinist, he concluded that plaintiff nonetheless

retains the capacity to perform light work which is not complex and does

not require ongoing interaction with the general public.  AT 157-58.

Applying those findings to the medical-vocational guidelines (the "grids")

set forth at 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ concluded that a

finding of no disability was directed.  *Id.*

     That determination was subsequently vacated by the Social Security

Administration Appeals Council on January 21, 2000, and the matter was

remanded for a further hearing.  AT 168-70.  In its decision, the Appeals

Council found fault with the ALJ's rejection of opinions from plaintiff's

treating physician without contacting him for amplification or more

information, and expressed concern over the lack of vocational evidence

bearing on the question of the extent to which plaintiff's exertional and

nonexertional limitations prevent him from performing light work.  *Id.*  The

matter was therefore remanded, with the instructions that the ALJ
reconsider his position regarding treating source opinions in the record,
"[o]btain evidence from a vocational expert to clarify the effect of the
assessed limitations on the claimant's occupational base, and to
determine whether the claimant has acquired any skills that are
transferable to other occupations under the guidelines in Social Security
Ruling 82-41[.]" *Id.*  The Appeals Council also directed that in the event of
a finding of disability, the claimant's drug addiction and/or alcoholism be
considered.  *See id.*

Following the remand, a second hearing was conducted by ALJ
Brown on April 17, 2000.  AT 61-75.  ALJ Brown subsequently issued a
decision on September 19, 2000, once again finding that the plaintiff was
not disabled.  AT 23-35.  In that determination ALJ Brown found, *inter alia*,
that plaintiff maintained the capacity to perform light, unskilled work and,
once again applying the grids, concluded that a finding of no disability was
warranted.  *Id.*  Curiously, without mentioning the Appeals Council's
directive in this regard or offering any rationale for his rejection of it, ALJ
Brown failed to elicit vocational testimony during the second hearing.  *See
id.*

-12-

On August 23, 2001 the Social Security Administration Appeals Council once again set aside the ALJ's finding.  AT 21-22.  In that determination, the Appeals Council was critical of the ALJ's failure to base his findings on vocational expert testimony, and additionally noted that in rejecting claimaint's subjective complaints as not being credible, the ALJ did not discuss his consideration of the relevant factors typically looked to in evaluating such evidence.  *Id.*  The Appeals Council remanded the matter for a new hearing, with a directive that it be reassigned to another ALJ, and that in addition to addressing the areas of the Appeals Council's disagreement with the earlier decision, the ALJ take into consideration plaintiff's mental impairments.  *See id.*

A third hearing was conducted in the matter on March 19, 2002, this time with ALJ Carl E. Stephan presiding.  AT 76-108.  Following that hearing, at which plaintiff was represented by counsel, ALJ Stephan issued a decision on April 17, 2002 again finding the plaintiff was not disabled prior to March 31, 1998 – the date upon which his insured status expired.  AT 8-19.  While in his decision ALJ Stephan found the existence of physical and mental impairments, he concluded that they did not meet or equal, either singly or in combination, any of the listed conditions set

forth in the governing regulations.  AT 12-13.  Specifically addressing the mental component, ALJ Stephan concluded that plaintiff's condition did not satisfy any of the Part B criteria of the psychiatric review technique requirements.  *Id.*

Proceeding to step four of the familiar, five part disability test, ALJ Stephan concluded that plaintiff is incapable of performing his past relevant work as a machinist, in light of the exertional requirements associated with that position.  AT 13-14.  Addressing both his physical and mental impairments, ALJ Stephan concluded that plaintiff retains the residual functional capacity ("RFC") at the relevant times to "perform light work activity which can be performed with moderate limitations in using judgment, dealing with work stresses, maintaining attention and concentration, and understanding, remembering and carrying out detailed instructions[,]" and concluded, both in reliance upon expert vocational testimony and the grids, that a finding of no disability was justified.[4]  AT 17-18.  That decision became a final determination of the agency when, on August 15, 2002, the Appeals Council denied review.  AT 3-4.  In its

---

[4]      Among the available jobs which the vocational expert found plaintiff capable of performing were automobile salesman, meter reader, auto rental clerk, film rental clerk, apartment rental clerk, and hotel desk clerk.  AT .104

decision denying review, the Appeals Council specifically noted that it had considered new regulations, which became effective on February 19, 2002, setting forth new listings relating to musculoskeletal and similar other impairments.  AT 3.

B.     Proceedings In This Court

Plaintiff, who is proceeding *pro se* and *in forma pauperis*, commenced this action on October 11, 2002.  Dkt. No. 1.  Issue was thereafter joined by the defendant's filing of an answer, accompanied by an administrative transcript of proceedings before the agency, on April 9, 2003.  Dkt. Nos. 10, 11.  With the filing on May 27, 2003 of plaintiff's brief, Dkt. No. 12, and a brief on behalf of the Commissioner on July 8, 2003, Dkt. No. 13, the matter is now ripe for determination, and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(d).  *See also* Fed. R. Civ. P. 72(b).[5]

---

[5]     This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., then-Chief United States Magistrate Judge, on January 28, 1998, and amended and reissued by Chief District Judge Frederick J. Scullin, Jr. on September 19, 2001.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

III.   DISCUSSION

_____ A.   Standard of Review

_____A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, her decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F. Supp.2d at 148.  If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13

-16-

F. Supp.2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)).  To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record.  *Id.*; *Martone*, 70 F. Supp.2d at 148 (citing *Richardson*).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp.2d at 148.  In such a case the

court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning. *Martone*, 70 F. Supp.2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level. *See Lisa v. Sec'y of Dep't of Health & Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency. *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Retirement Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

>    B.    Disability Determination - The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months[.] "  42 U.S.C. §

423(d)(1)(A).   In addition, the Act requires that a claimant's

> physical or mental impairment or impairments
> [must be] of such severity that he is not only
> unable to do his previous work but cannot,
> considering his age, education, and work
> experience, engage in any other kind of substantial
> gainful work which exists in the national economy,
> regardless of whether such work exists in the
> immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The first step requires a determination of whether

the claimant is engaging in substantial gainful activity; if so, then the

claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§

404.1520(b), 416.920(b).   If the claimant is not gainfully employed, then

the second step involves an examination of whether the claimant has a

severe impairment or combination of impairments which significantly

restricts his or her physical or mental ability to perform basic work

activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer

from such an impairment, the agency must next determine whether it

meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled".  *Martone*, 70 F. Supp.2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp.2d at 150.

C.      The Evidence In This Case

In evaluating the Commissioner's determination of no disability, applying the requisite deferential standard, the court is somewhat hampered by the fact, doubtedly attributable to his *pro se* status, that the plaintiff has not specifically identified any instances in which the ALJ applied inappropriate legal standards, nor does he cite any findings which in his view are not supported by substantial evidence in the record, instead merely stating his general disagreement with the resulting finding of no disability.  I will therefore address the analysis employed by the ALJ, in search of any potential areas of disagreement.

1.      Listed Disabilities

a.      Mental Impairment

Plaintiff's mental condition, which has been reviewed by several professionals, potentially implicates several listed disorders, including in particular affective disorders, addressed in section 12.04 of the listings; personality disorders, which are the subject of section 12.08; and substance addiction disorders, discussed in section 12.09.

Where an alleged disability consists of a mental impairment, a special procedure is followed at each level of administrative review.  20

C.F.R. § 404.1520a; *Martone*, 70 F. Supp.2d at 149.  First, the

Commissioner records the pertinent signs, symptoms, findings, functional

limitations, and effects of treatments contained in the record.  *Id.*  If a

mental impairment is determined to exist, the Commissioner must next

indicate whether certain medical findings which have been found

especially relevant to the ability to work are present or absent.  *Id.*  The

Commissioner then rates the degree of functional loss resulting from the

impairment – on a scale ranging from no limitation to severe limitation,

which is incompatible with the ability to do work-like functions – analyzing

four factors: 1) activities of daily living; 2) social functioning;  3)

concentration, persistence, and pace; and 4) deterioration or

decompensation in work or work-like settings.  *Id.*  The Commissioner

must then determine the severity of the mental impairment, and whether it

meets or equals a listed mental disorder.  *Id.*  If the impairment is severe,

but does not meet or equal a listed mental disorder, the Commissioner

analyzes the claimant's RFC, considering whether the claimant has a

limited ability to carry out certain mental activities – such as limitations in

understanding, remembering, and carrying out instructions, and in

responding appropriately to supervision, co-workers, and work pressures

in a work setting – that may reduce his or her ability to do past work and other work.  *See* 20 C.F.R. §§ 404.1520a, 404.1545(c).

Generally speaking, in order to meet or equal one of the listed mental disorders potentially at issue in this case, a claimant must satisfy both the paragraph A and paragraph B criteria of the relevant listing.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A).[6]  In finding that plaintiff had not satisfied any of the Part B criteria, the ALJ relied on several record entries, including evaluations of the plaintiff by Dr. Denburg, a psychological consultant, and Dr. Russell.  AT 12-13.  Based upon his examination and testing, Dr. Russell discerned no impairment in plaintiff's daily living activities, a finding consistent with the review of agency consultant, Dr. Berliss, conducted on January 27, 1998.  AT 356, 397. The ALJ also found, based on the various reports in the record, that plaintiff suffers from only moderate limitations in concentration, persistence and pace in task completion, noting that there was no evidence of any episode of deterioration or decompensation over an

_____

[6]    Some of the listed disorders set forth, including affective disorders under section 12.04, allow that as an alternative to satisfying the B criteria, a claimant may meet criteria set forth in Part C.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A).  ALJ Stephan concluded, however, that plaintiff could not meet the requirements of Part C, AT 13, and there is no evidence in the record to undermine this finding.

extended period.  AT 13.  These findings are well supported by the reports in the record, including that of state agency medical consultant Dr. Berliss, whose evaluation can constitute substantial evidence to support the Commissioner's decision.[7]  *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995); 20 C.F.R. § 404.1527(f).

In sum, the finding that plaintiff's mental condition did not meet or equal any listed disorder is supported by substantial evidence in the record.

### b.   Spinal Impairment

In his decision, ALJ Stephan did not specifically reference any listings addressing plaintiff's spinal condition.  The Appeals Council, however, considered the applicability of those listings, which were significantly amended in 2002, Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 FR 58010, 58017-18 (proposed Nov. 19, 2001; effective Feb. 19, 2002), and

---

[7]      The ALJ did acknowledge an observation made by Dr. Russell to the effect that Johansen was "irritable and short tempered during the testing and interview."  AT 13, 352.  The ALJ rejected that statement as an indication of a limitation in the area of social functioning in favor of findings of J. Everard, Sr., a counselor who worked with the plaintiff during his treatment in 1997 at the New Horizons Alcoholism/Chemical Dependency Treatment Center, based upon Everard's opportunity to observe the plaintiff on a regular and more prolonged basis.  AT 13, 317.

concluded that the new listings did not require a finding of disability in plaintiff's case.

In order to meet or equal a listed physical impairment, under the amended version of those listings, plaintiff's spinal disorder must have resulted in compromise of a nerve root or spinal cord, with

> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in ability to ambulate effectively, as defined in 1.00B2b

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

The evidence in the record fails to support any of these findings.  It is true that the record reflects a history of the plaintiff which includes a vertebra fracture and suggests the compromise of the spinal cord, though with no corresponding nerve root damage.  A CT scan conducted on December 15, 1994 reflects a fracture at the C2 level with the existence of some hematoma, but reports "no further compromise of the canal and no other abnormalities[.]"  AT 299.  Dr. Scrivani's report of July 17, 1997 also finds evidence of an old compression fracture at the L4 level.  AT 313.

The record is completely lacking, however, in evidence of any of the three required accompanying symptoms, including either evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication, at least one of which is required in order to establish that the condition meets or equals the section 1.04 listing.  Dr. Lusins, who evaluated the plaintiff in January of 1998 on behalf of Dr. Xanthaky, plaintiff's treating physician, recorded that plaintiff had good muscle strength in his upper and lower extremities and reflexes were all within the normal range.  AT 409.  In a similar vein, on April 13, 1998 Dr. James Elting reported normal neurological findings, observing that plaintiff

was "fully mobile."  AT 415.  A CT scan conducted on or about January 28, 1998 also reflected that while there were some degenerative changes noted and a bulging disc at L4-5, "no clear cut spinal stenosis is noted."  AT 414.  The ALJ's finding, implicit in his decision that plaintiff's spinal condition did not meet or equal section 1.04 of the listings, is therefore supported by substantial evidence.

### 2.   The ALJ's RFC Finding

Before proceeding to assess the availability of jobs capable of being performed by the plaintiff, ALJ Stephan first assessed his RFC.  Based upon the evidence adduced, the ALJ concluded that Johansen retained the exertional capabilities of performing a full range of light work activity.[8]  Addressing the nonexertional limitations imposed by plaintiff's mental condition, ALJ Stephan concluded that Johansen can perform light work

---

[8]     By regulation light work is defined as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls.

20 C.F.R. § 404.1567(b).

"with moderate limitations in the ability to use judgment, deal with work stresses, maintain attention and concentration, and understand, remember and carry out detailed instructions[.]"  AT 14.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue.  20 C.F.R. § 404.1545(a).  An RFC finding is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis.  *Id.*; *Martone*, 70 F.Supp.2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull.  20 C.F.R. § 404.1569a. Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. § 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).  When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *Martone*, 70 F.Supp.2d at 150 (citing *Ferraris*, 728 F.2d at 587).  An

administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations. *Martone*, 70 F.Supp.2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F.Supp. 300, 309-10 (E.D.N.Y. 1997).

The finding that plaintiff retains the RFC to perform in a low stress environment must be evaluated against the backdrop of SSR 85-15 which provides that:

> The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day. A person may become panicked and develop palpitations, shortness of breath, or feel faint while riding in an elevator; another may experience terror and begin to hallucinate when approached by a stranger asking a question. Thus, the mentally impaired may have difficulty meeting the requirements of even so-called "low-stress" jobs.
>
> Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job. for example, a busboy need only clear dishes from tables. But an  individual with a severe mental disorder may find unmanageable the demands of making sure that he removes all the dishes, does not drop them, and gets

the table cleared promptly for the waiter or waitress. Similarly, an individual who cannot tolerate being supervised may not be able to work even in the absence of close supervision; the knowledge that one's work is being judged and evaluated, even when the supervision is remote or indirect, can be intolerable for some mentally impaired persons. Any impairment-related limitations created by an individual's response to demands of work, however, must be reflected in the RFC assessment.

SSR 85-15, 1985 WL 56857, at *6 (S.S.A. 1985).

The ALJ's RFC finding, which forms the underpinning of the finding of no disability based upon the vocational expert's testimony, is well supported.  The ALJ recognized, at the outset, plaintiff's ability to perform the essential forms of light work, with some limitations.  That light work finding is consistent with the RFC report of Dr. Hameed, a state agency consultant, AT 371, as well as by plaintiff's report to Dr. Joshpe that he is capable of lifting twenty-five pounds without much discomfort, AT 381, and his statement to Dr. Bethje that he can walk one mile, and can stand for one hour and sit for one hour, AT 311.

Aside from plaintiff's statements regarding his limitations, the only potentially conflicting evidence casting doubt upon this RFC finding is the naked assessment of Dr. Xanthaky, who opined on one occasion in 1995 that plaintiff could not work, and on another early the following year that

he should be limited to part time work.[9]  AT 283-84.  It should be noted that in his second report that Dr. Xanthaky noted that plaintiff was capable of walking, standing, stooping, bending, sitting, lifting, carrying, pushing and pulling, though with limits that were not specified.[10]  AT 283.

In arriving at his RFC determination ALJ Stephan considered but rejected an RFC assessment conducted by Dr. Hadi Ladau on June 24, 1999.  AT 14-15, 425.  That report noted limitations in plaintiff's ability to sit, stand, walk and climb, and his inability to stop, squat, bend, crawl, lift, push or pull, and that use of his left arm was greatly limited.  AT 425.  Because that assessment was completed more than one year after plaintiff's insured status expired, and thus outside of the relevant time period, it was properly rejected.  *See*, *e.g.*, *Lewis v. Shalala*, Nos. 94 Civ. 0744, 74109, 1994 WL 714421, at *3 (S.D.N.Y. Dec. 21, 1994); *see also Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991).

The ALJ also rejected an RFC assessment completed by Dr. Xanthaky in March of 1996.  *See* AT 283.  In that report, Dr. Xanthaky

_____

[9]  As the respondent correctly notes, claimant, who is able to work in only a part-time position, is not necessarily disabled, since part time work may constitute substantial gainful activity. 20 C.F.R. § 404.1572(a).

[10]  While Dr. Xanthaky also stated that the plaintiff could not climb, AT 283, climbing is not one of the physical activities required to perform light work.  20 C.F.R. § 404.1567(b).

noted limitations in walking, standing, stooping and bending, sitting, lifting and carrying, pushing and pulling and that the plaintiff should not be climbing, but did not specify the limits related to those areas. *Id.* As was noted by the ALJ, that report is not supported by objective medical evidence, and it is questionable whether, and if so to what extent, the limitations noted impinge upon the plaintiff's ability to perform light work.

From a nonexertional point of view, the ALJ's assessment of plaintiff's RFC is also well supported. The record reflects that in assessing plaintiff's nonexertional impairments and their effect upon his RFC, ALJ Stephan carefully considered the various psychological reports and test results. Based upon his evaluation of those materials the ALJ rejected the opinion of Dr. Xanthaky that plaintiff is not capable of working, as not well supported and contrary to the evidence which, he found, demonstrated that "despite his mental impairments, the claimant was able to interact with others, perform cognitive tasks, and maintain attention and concentration to a degree consistent with the performance of simple work." AT 16. Having carefully reviewed the record, I find no basis to conclude that this determination is not supported by substantial evidence.

The RFC determination, upon which the vocational expert's opinion

-32-

is based, therefore draws support of substantial evidence in the record.

### 3.     Rejection of Plaintiff's Subjective Complaints

During the third hearing, plaintiff testified that he suffers from constant muscle spasms and back pain, making it impossible for him to work an eight hour day.  AT 87-90.  Johansen also attributed his inability to work to anxiety and the discomfort which he experiences when in contact with other people.  *Id.*  In making his RFC finding and ultimate determination of no disability, ALJ Stephan rejected these subjective complaints.  AT 17.

An ALJ must take into account subjective complaints of pain in making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d).  When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant. *Marcus*, 615 F.2d at 27; *Martone*, 70 F. Supp.2d at 151 (citing *Marcus*). Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain*.  See Mimms v. Heckler,* 750 F.2d 180, 185-86 (2d Cir. 1984).  In deciding how to exercise that discretion the ALJ must consider a variety of factors which ordinarily would be relevant on the issue of credibility in any context, including the

-33-

claimant's credibility, his or her motivation, and the medical evidence in the record.  *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ must reach an independent judgment concerning the actual extent of pain suffered and its impact upon the claimant's ability to work.  *Id.*

When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a medical impairment which one could reasonably anticipate would produce such pain, it is entitled to considerable weight.[11]  *Barnett*, 13 F. Supp.2d at 316; *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony concerning the intensity, persistence or functional limitations associated with his or her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5)

---

[11]  In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp.2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence.  *Martone*, 70 F. Supp.2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  *Aponte v. Sec'y, Dep't of Health & Human Servs. of U.S.,* 728 F.2d 588, 591 (2d Cir. 1984).

It may be, as plaintiff asserts, that he does suffer from some degree of discomfort as a result of his back condition.  The fact that he suffers from discomfort, however, does not automatically qualify him as disabled, since "disability requires more than mere inability to work without pain."

*Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

Plaintiff's subjective complaints were rejected by the ALJ as not fully credible based upon the lack of objective findings of a limitation of range of motion and neurological signs or treatment which would indicate a restriction on the ability to sit, stand and walk for six hours in an eight hour work day and perform light lifting.  The ALJ's rejection of plaintiff's complaints is sufficiently stated and supported by the record.  In that regard it is noted that Dr. Xanathky, one of plaintiff's treating physicians, as well as Dr. Denburg, both recommended that plaintiff receive vocational rehabilitation, signaling their apparent belief that plaintiff is capable of working.  AT 283, 380.  Those recommendations support an inference that claimant did not suffer from a completely disabling condition.  *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991).  This, in combination with Dr. Josphe's observation that plaintiff did not appear motivated to work, support the rejection of plaintiff's pain complaints.

### 4.   Vocational Expert

In determining the issue of disability the ALJ, following the earlier directives of the Appeals Council, appropriately considered the testimony of a vocational expert to determine whether the Commissioner had carried

her burden at step five of the governing test to establish the existence of

jobs in the national local economy capable of being performed by the

plaintiff.  AT 13-14, 17.  During his testimony the vocational expert was

asked hypothetical questions based upon the ALJ's RFC finding.  *See* AT

103-06.  Because those RFC findings are supported by substantial

evidence, there is no reason that has been presented by the plaintiff or

which is evident from the record to reject the conclusions of that

vocational expert, to the effect that there are such jobs within the national

and local economies.

      D.   <u>New Evidence</u>

     In support of his quest to have the finding of no disability set aside,

plaintiff has submitted new evidence which, he maintains, warrants a

finding of disability.  That evidence includes letters generated in 2002 and

2003 addressing plaintiff's condition, and primarily the mental component.

     Under the statutory framework which governs cases of this nature, a

court may direct that the Commissioner consider additional evidence

submitted by a claimant, "but only upon a showing that there is new

evidence which is material and that there is good cause for the failure to

incorporate such evidence into the record in a prior proceeding[.]"  42

U.S.C. § 405(g).  In order for new evidence to be properly considered, it

must be

> (1)  new and not merely cumulative of what is
> already in the record, and that it is (2) material, that
> is, both relevant to the claimant's condition during
> the time period for which benefits were denied and
> probative[.]  The concept of materiality requires, in
> addition, a reasonable possibility that the new
> evidence would have influenced the
> [Commissioner] to decide [the] claimant's
> application differently.  Finally, claimant must show
> (3) good cause for [his] failure to present the
> evidence earlier.

*Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (internal citations and

quotations omitted); *see Lisa,* 940 F.2d at 44.

In this instance the relevant time period extends only through March

31, 1998.  Thus, the new evidence proffered by the plaintiff can be

considered material only if it sheds light on his condition during that time

period.  It is true that the mere fact that the evidence offered by the

claimant may have been generated after that date, and indeed after the

ALJ's decision, is not in and of itself determinative of whether it meets this

standard of materiality.  *See Rivera v. Sullivan*, 923 F.2d 964, 968 (2d Cir.

1991).

The first item of new evidence offered by the plaintiff is a letter to the

court from psychologist Stephen Schaeffer, dated May 13, 2003.  Dkt. No.
12.  That letter, however, notes that Dr. Schaeffer has only been seeing
the plaintiff since December 9, 2002, and contains no information which
would shed light on his condition during the relevant time period.
Similarly, the letter dated September 11, 2002, from Christian Juliano,
CSW-R, who apparently practices with Otsego County Community
Services, reflects that Johansen has been a client of that agency since
March, 2002, and once again contains no information regarding his
condition during the relevant time period.  *Id.*

The final two pieces of new evidence proffered by the plaintiff
consist of letters dated July 11, 2002 and July 22, 2002, both reflecting
that the plaintiff is now working with the Crisis Intervention and Support
Services Department at Opportunities for Otsego County, Inc.  *Id.*  Once
again, nothing in these two documents, which suggest improvement of
plaintiff's condition and, admirably, his efforts to find gainful employment,
reflects on his condition during the relevant time period.

Because the new evidence now tendered by the plaintiff is not
material to his condition during the relevant times, it provides no basis for
remanding the matter to the agency for further consideration.

VI.   <u>SUMMARY AND RECOMMENDATION</u>

_____The evidence in the record supports the ALJ's conclusion, which echoes earlier findings rendered on two occasions by another ALJ, that plaintiff does not suffer from any mental or physical conditions that either meet or equal any of the listed conditions in the governing regulations or prevent him from performing light work subject to moderate limitations in using judgment, dealing with work stresses, maintaining attention and concentration, and understanding, remembering and carrying out detailed instructions.  Given that RFC finding, which is supported by substantial evidence in the record, the vocational expert called to testify on behalf of the Commissioner concluded that there are jobs in sufficient numbers within the national and local economies which plaintiff is capable of performing, notwithstanding his limitations.  This finding is fully supported by substantial evidence in the record.  I therefore recommend a finding that the Commissioner's determination of no disability resulted from the application of proper legal principles, and is supported by substantial evidence in the record.

Based upon the foregoing it is hereby

RECOMMENDED, that defendant's motion for judgment on the

pleadings be GRANTED, the Commissioner's determination of no disability AFFIRMED, and plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties by regular mail.

Dated:     June 10, 2005
           Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\socialsecurity\RFC low stress environment\johansen.wpd

-41-